# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ----------------------------------------------- X | |
| | |
| IRIS CHAMBERS | Civil Action No.: 18-cv-02386 |
| 745 Rachel Drive | |
| York, Pennsylvania 17404 | |
| | |
| and | |
| | |
| LAMAR DeSHIELDS | |
| 745 Rachel Drive | |
| York, Pennsylvania 17404 | **Jury Trial Demanded** |
| | |
| Plaintiffs | |
| | |
| v. | |
| | |
| YORK COUNTY PRISON | |
| 3400 Concord Road | |
| York, Pennsylvania 17402 | |
| | |
| And | |
| | |
| CLAIR DOLL | |
| individually & in her official capacity as | |
| Warden of | |
| YORK COUNTY PRISON | |
| 3400 Concord Road | |
| York, Pennsylvania 17402 | |
| | |
| And | |
| | |
| MARY SABOL | |
| individually & in her official capacity as | |
| former Warden of | |
| YORK COUNTY PRISON | |
| 3400 Concord Road | |
| York, Pennsylvania 17402 | |
| | |
| And | |
| | |
| John Does 1-10 | |

:
Defendants        :

# FIRST AMENDED COMPLAINT

## NATURE OF ACTION

1. Iris Chambers and Lamar DeShields (Plaintiffs) bring this action against the Defendant York County Prison (YCP), requesting judgment against YCP for YCP's ongoing violations of their civil rights. YCP has intentionally discriminated against Plaintiffs based on their race (African-American) in the terms and conditions of their employment. YCP has fostered and perpetuated racial discrimination at the workplace which, in turn, has created a hostile work environment for Plaintiffs. Because Plaintiffs complain about racial discrimination, YCP has retaliated against them.

## JURISDICTION AND VENUE

2. This Court has jurisdiction because Plaintiffs present a federal question, pursuant to 28 U.S.C. §1331 and §1332.

3. This Court has supplemental jurisdiction over Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. § 951 *et seq*. pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Middle District of Pennsylvania, as the facts alleged in this matter occurred at the York County Prison, in this judicial district.

5. Plaintiffs have exhausted all administrative remedies. and have received a right to sue from the EEOC. This action is filed within 90 days of the issuance of EEOC's right to sue letters.

## PARTIES

6. Plaintiff Iris Chambers is an African-American female who resides in York, Pennsylvania.

7. Plaintiff Chambers was hired as a corrections officer by YCP in May 2008 and, at all times since, has been employed by YCP in that position.

8. Plaintiff Lamar DeShields is an African American male who resides in York, Pennsylvania.

9. Plaintiff DeShields was hired as a corrections officer by YCP in 2003 and, at all times since, has been employed by YCP in that position.

10. Defendants, Clair Doll and Mary Sabol, are adult individuals who, at all times material herein, acted individually, and/or as an agent, servant, workman, and/or employee of The York County Prison (YCP), as well as in their official capacity as Warden and former Warden, respectively, acting under color of State Law. YCP is located in York, Pennsylvania and employs over 500 employees, of which only about 20 are African-American.

11. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below. Upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendant, liable to Plaintiff hereunder.

## FACTS

12. YCP has investigated Plaintiffs, without good cause. YCP has shamelessly fabricated or otherwise embellished allegations in an attempt to justify its investigations and disciplinary actions against Plaintiffs.

13.     YCP selectively targets Plaintiffs for investigation and/or discipline for conduct that is deemed acceptable by non-African-American employees.  Non-African-American employees are neither investigated nor subject to discipline when they engage in the same conduct for which Plaintiffs are investigated and/or disciplined.

14.     YCP is dismissive when Plaintiffs complain that non-African-American managers and employees harass them with comments about eating watermelon and fried chicken or when they complained that a non-African-American employee touts a Confederate flag.

15.     A YCP Captain repeatedly refers to Plaintiffs and other African-American employees as "Yous."

16.     YCP repeatedly assigns Plaintiffs to work in the most dangerous areas of the prison.

17.     YCP repeatedly passes over Plaintiffs for promotions in favor of less-qualified non-African-American employees.  YCP knows that its upper management and employees harass, disparage and denigrate Plaintiffs because of Plaintiffs' race, but YCP does nothing to remediate the ongoing harassment.

18.     YCP ignores Plaintiffs' internal complaints and grievances regarding the racial harassment that is severe and/or pervasive at YCP and which Plaintiffs continually experience.

19.     YCP's inaction regarding Plaintiffs' internal complaints and grievances essentially condones non-African American employees' targeting and harassing Plaintiffs due to Plaintiffs' race.

## PLAINTIFF CHAMBERS

20.     Plaintiffs incorporate each of the foregoing paragraphs, as if fully stated herein.

21. Despite her unblemished record and fine job performance, Plaintiff Chambers has been repeatedly passed over for promotions, in favor of less qualified employees who are not African-American.

22. Specifically, Plaintiff Chambers was passed over for a sergeant position in 2018.

23. On at least one occasion, YCP rescinded a favorable assignment that it had previously granted Plaintiff Chambers and transferred her back to an unfavorable assignment.

24. YCP's transfer of Plaintiff Chambers from a favorable to an unfavorable assignment was due to her race.

25. Upon information and belief, African American officers have been regularly assigned to unfavorable and unsafe assignments within the prison at a higher rate than white officers.

26. For example, Plaintiff was assigned to a max security area of the prison when she was 9 months pregnant in 2012. Plaintiff Chambers has continued to be assigned to unsafe situations for years up through 2018.  For example, Plaintiff was regularly assigned to a dorm where there are approximately 60 inmates and just one officer (Plaintiff Chambers). That was a very unsafe situation. This was still occurring in 2018.

27. On more than one occasion, Officer Siegman locked Plaintiff Chambers between two prison doors, as she walked from one building to another.  This occurred around August 2017.

28. Officer Siegman would purposely keep the prison doors locked, thereby preventing Plaintiff Chambers' access to the building.

29. Officer Siegman permitted non-African-American employees' ready access between buildings and did not lock doors to keep them out.

30. Plaintiff Chambers reported Officer Siegman's misconduct to the Warden, but no action was taken against Officer Siegman.

31. On another occasion, Officer Rivera disclosed Plaintiff Chambers' personal information to inmates, said misconduct violating YCP policies.

32. The release of Plaintiff Chambers' personal information jeopardized her physical safety.

33. Plaintiff Chambers reported the matter to the Warden, but the incident was not remediated and no action was taken against Officer Rivera, despite the fact that Officer Rivera violated YCP policies and placed Plaintiff Chambers at risk.

34. Plaintiff Chambers has repeatedly been the victim of racial comments about watermelon and fried chicken.

35. Non-African-American employees have taunted Plaintiff Chambers about her hair because it differs from that of non-African-Americans. Plaintiff wore a hair piece and comments were repeatedly made while Plaintiff was walking through the security check point. This was ongoing in 2017 and 2018.

36. As a result of the racial discrimination that she experiences at YCP, Plaintiff Chamber receives medical treatment due to stress and anxiety.

37. Plaintiff Chambers has been repeatedly bullied by a certain Caucasian female co-worker in 2017. On one occasion, the co-worker's bullying escalated to the point that the co-worker called another female into the area as "back up." Even though it is against YCP policy, the Captain allowed the female to come to the prison block as "back up."

38. Plaintiff Chambers reported the bullying female to the former warden, Mary Sabol along with current warden, Claire Doll in 2017. Sabol acted concerned that the Captain allowed another female to enter the prison block as "back up," but the matter was simply tolerated, and no action was taken.

39. In or about May 2018, Plaintiff Chambers filed a complaint with the EEOC charging YCP with unlawful race discrimination.

40. Plaintiff Chambers' EEOC complaint specifically stated that the racial discrimination against her was ongoing.

41. Since Plaintiff Chambers' filing with the EEOC, YCP has engaged in retaliation against Plaintiff Chambers.

42. On several occasions in the summer of 2018, multiple officers bullied Plaintiff in the presence of inmates. The officers also wrote inappropriate words that were sexual in nature on Plaintiff's personal property. Plaintiff reported the incidents to her supervisors – the complaints were ignored, and the bullying officers were not punished.

43. In another incident in September 2018 officers wrote on Plaintiff's Chambers' notepad. The officers added three items to Chambers' list: "weaves, lipstick, and butt wipes." Plaintiff was humiliated and disrespected. Plaintiff formally complained to her supervisors about this incident but was ignored.

44. Sergeant Diane Curry was one of the officers that was involved in the notepad incident. Curry began making racially charged remarks only <u>after</u> she was promoted to Sergeant in 2018. The timing of her racial comments reveals Sergeant Curry's confidence that racially charged comments are acceptable at YCP, and that her racist comments will not subject her to discipline.

45. In December 2018, YCP imposed a one-day suspension against Plaintiff Chambers. The suspension was unfounded and in retaliation for Plaintiff Chambers' EEOC complaint and other internal complaints of racial discrimination by YCP.

46. Around January 2019, the allegations above were reported in the news. Very soon after, Plaintiff Chambers' commander, Will Cuffaro threatened to punish Plaintiff for making a copy

of her schedule – something that was not a violation of prison policies and regularly done within the prison. Plaintiff's union representative, Mr. Hagan witnessed Cuffaro's attempted punishment. Cuffaro never followed through with the discipline but Plaintiff felt harassed and uncomfortable by Cuffaro's threat of punishment.

47. In March 2019, Plaintiff Chambers called for backup and did not receive it from another white officer. The white officer simply walked away, putting Plaintiff in a very dangerous situation.

48. Plaintiff is fearful of reporting more incidents to her supervisors who ignore her complaints or retaliate when complaints are made.

## PLAINTIFF DeSHIELDS

49. Plaintiffs incorporate each of the foregoing paragraphs, as if fully stated herein.

50. Plaintiff DeShields has a long and unblemished record as a YCP corrections officer. In spite of his fine record, YCP has repeatedly passed Plaintiff DeShields over for promotions, in favor of lesser qualified employees who are not African-American.

51. Specifically, Plaintiff DeShields was passed over for a sergeant position in 2018.

52. It is a customary hiring practice at YCP to hire employees' family members.

53. Like many other corrections officers at YCP, Plaintiff DeShields sought to get his son hired at YCP as a corrections officer. This was around 2018.

54. It is typical and commonplace for YCP to hire the family members of Caucasian corrections officers.

55. YCP did not offer a position to Plaintiff DeShields' son but hired approximately 33 new employees who were not African-American.

56.     Because of Plaintiff DeShields' race, YCP purposely deviated from its customary hiring practice and refused to hire Plaintiff DeShields' son.

57.     YCP's hiring practices unlawfully discriminate on the basis of race.

58.     Plaintiff DeShields repeatedly experiences racial discrimination, which include comments about watermelons and fried chicken.

59.     YCP has assigned Plaintiff DeShields to work in the rougher and more dangerous areas of the prison. This has been throughout the time Plaintiff DeShields has been employed by the prison. For example, Plaintiff works in a dorm area of the prison where there are close to 60 inmates and just one officer (DeSheilds). That is a very unsafe situation. This has been ongoing for many years, including 2017 and 2018.

60.     Plaintiff DeShields complained to the former warden, Mary Sabol about his co-worker's display of the Confederate flag on YCP property, but his complaint was never resolved. This was ongoing in 2016 and 2017.

61.     In or about May 2018, Plaintiff DeShields filed a complaint with the EEOC charging YCP with unlawful race discrimination.

62.     Plaintiff DeShields' EEOC complaint specifically stated that the racial discrimination against him was ongoing.

63.     Since Plaintiff DeShields' filing with the EEOC, YCP has retaliated against Plaintiff DeShields.

64.     For example, around January 2019 the allegations above were reported in the news. In retaliation, another officer encouraged inmates to file false complaints against Plaintiff DeShields. Plaintiff's supervising lieutenant knew the inmates' complaints were unfounded but

attempted to punish Plaintiff. Ultimately, a higher supervisor stopped the discipline and removed the instigating officer from the area.

65. In another example of the ongoing hostile work environment, after the news report in 2019 regarding both Plaintiffs, a prison officer and union representative, Sean Krinock posted racist comments on the prison's Facebook page. The comments were eventually removed.

66. Both Plaintiff Chambers and DeShields are also aware of YCP treating other African American officers worse than white officers. For example, in March 2019, YCP terminated Officers Atwater and Farmer (both female African Americans). Upon information and belief, the conduct of Atwater and Farmer was not worse than conduct of white officers that have not been terminated.

67. Upon information and belief, YCP supervisors target African American officers towards finding alleged employment infractions. YCP supervisors do not investigate and punish similar conduct by white officers.

68. The conduct of the Defendants was part of a custom, policy and/or practice and these customs, policies or practices caused the violations of Plaintiffs' rights. Specifically, Defendants systemically treat African American officers differently than white officers (described above), including as a result of failing to train, supervise or otherwise.

69. Upon information and belief, Defendants, Warden Claire Doll and former Warden Mary Sabol, are/were aware of these aforesaid dissimilatory practices, and are/were the decision makers regarding these practices.

## COUNT I - TITLE VII VIOLATION

70. Plaintiffs incorporate each of the foregoing paragraphs, as if fully stated herein.

71.     YCP has engaged in a pattern of unlawful racial discrimination against Plaintiffs in the terms and conditions of their employment, i.e., by failing to promote Plaintiffs, by assigning them unfavorable and unsafe prison areas in which to work, and by failing to remediate their legitimate complaints of racial discrimination and harassment in the workplace.

72.     YCP has retaliated against Plaintiffs because Plaintiffs complain about racial discrimination and harassment.

73.     YCP treats Plaintiffs differently and unfavorably as compared to its non-African American employees, in violation of Title VII.  See 42 U.S.C. §2000(e) *et seq.*

74.     YCP's persistent unlawful discrimination against Plaintiffs due to their race creates a hostile work environment for Plaintiffs, in violation of Title VII.  See 42 U.S.C. §2000(e) *et seq.*

75.     Said hostile work environment is severe and pervasive and alters the terms and conditions of Plaintiffs' employment, in violation of Title VII.  See 42 U.S.C. §2000(e) *et seq.*

76.     YCP's violations are done with malice and/or reckless indifference and warrant the imposition of punitive damages.

77.     As a direct and proximate result of YCP's Title VII violations, Plaintiffs have suffered damages and losses and have incurred attorney's fees and costs.

78.     As a direct and proximate result of YCP's Title VII violations, Plaintiff Chambers has suffered physically, emotionally and mentally for which she receives medical treatment.

79.     Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of YCP's discriminatory acts unless and until this Court grants the relief requested herein

## COUNT II - 1983 VIOLATION

80.     Plaintiffs incorporate each of the foregoing paragraphs, as if fully stated herein.

81.   YCP is a governmental entity and its actions were taken under color of State law.

82.   YCP's unlawful race discrimination against Plaintiffs deprived Plaintiffs of equal protection under the law, as guaranteed by the 14th Amendment of the United States Constitution and is actionable pursuant to 42 U.S.C. §1983.

83.   YCP's wrongful acts and violations were willful and done with deliberate indifference to the statutory and constitutional rights of Plaintiffs.

84.   As a direct and proximate result of YCP's wrongful acts and violations, Plaintiffs have suffered humiliation, embarrassment, emotional distress, and have sustained damages for which the recovery of compensatory damages may be awarded pursuant to 42 U.S.C. §1983.

85.   As a direct and proximate result of YCP's violation of 42 U.S.C. §1983, Plaintiffs have suffered the damages and losses set forth herein and have incurred attorney's fees and costs.

86.   YCP's wrongful acts and violations were done intentionally and/or knowingly with malice or reckless indifference and warrant the imposition of punitive damages.

### COUNT III – 42 U.S.C. § 1981
### RACE BASED DISCRIMINATION

87.   Plaintiffs incorporate each of the foregoing paragraphs, as if fully stated herein.

88.   Defendants evidenced an intent to discriminate against Plaintiffs by interfering with Plaintiffs rights to the performance and enjoyment of their contract of employment

89.   Defendants intentionally restricted the Plaintiff's contractual benefits based upon illicit discrimination.

90.   The aforesaid conduct of Defendants was intentional and undertaken in reckless disregard for the federally protected civil rights of Plaintiffs.

91.   Because of the said violation of 42 U.S.C. § 1981, Plaintiffs have suffered discrimination, humiliation, embarrassment, and other harms, and is entitled to entry of judgment in their favor,

and against Defendants, together with an award of declaratory and injunctive relief, damages, and ancillary relief as provided by 42 U.S.C. § 1981.

## COUNT IV - PHRA VIOLATION

92. Plaintiffs incorporate each of the foregoing paragraphs, as if fully stated herein.

93. YCP's differential treatment of Plaintiffs in the terms and conditions of their employment violated the PHRA, 43 Pa. Stat. §951 *et seq*.

94. YCP created a hostile work environment that targeted African-American employees, including Plaintiffs, in violation of the PHRA, 43 Pa. Stat. §951 *et seq*.

95. YCP's unlawful discrimination against Plaintiffs was intentional and willful.

96. As a direct and proximate result of YCP's unlawful acts and violations, Plaintiffs have suffered damages and losses and have incurred attorneys' fees and costs.

97. As a result of the YCP's unlawful acts and violations, Plaintiffs have suffered discrimination, humiliation, embarrassment, and other harms, and are entitled to entry of judgment in their favor, and against YCP together with an award of declaratory and injunctive relief, damages, and ancillary relief as provided by 43 Pa. Stat. §951 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to enter judgment in favor of Plaintiffs and grant them the following relief:

a. declaring the acts and practices complained of herein to be in violation of Title VII;

b. declaring the acts and practices complained of herein to be in violation of 42 U.S.C. §1983;

c. declaring the acts and practices complained of herein to be in violation of 42 U.S.C. §1981;

d. declaring the acts and practices complained of herein to be in violation of the PHRA, 43 Pa. Stat. §951 *et seq*.

e. enjoining and permanently restraining YCP from present and future unlawful race discrimination, as alleged herein.

f. entering judgment against YCP and in favor of Plaintiffs in an amount to be determined;

g. awarding compensatory damages to make Plaintiffs whole for earnings lost through YCP's unlawful failure to promote Plaintiffs, including associated benefits;

h. awarding compensatory damages to Plaintiffs for pain and suffering, emotional upset, mental anguish and humiliation, which Plaintiffs have suffered and continue to suffer because of YCP's unlawful race discrimination;

i. awarding Plaintiff Chambers compensatory damages for the physical, emotional and mental injuries she suffers as a result of YCP's racial discrimination.

j. awarding Plaintiffs such other damages as are appropriate under Title VII, 42 U.S.C. §2000(e) *et seq.*, 42 U.S.C. §1983, 42 U.S.C. §1981 and 43 Pa. Stat. §951 *et seq*.

k. awarding Plaintiffs, the costs of suit, attorney's fees, expert fees and any other fees that Plaintiffs incurred related to this lawsuit; and

l. granting such other and further relief as this Court may deem just, proper, or equitable.

Respectfully submitted,

BY: */s/ Brian R Mildenberg*
BRIAN R. MILDENBERG, ESQ
MILDENBERG LAW FIRM
Attorney ID No. 84861
1735 Market Street, Ste. 3750

Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
**Attorney for Plaintiff**

.

BY: */s/ Matthew Weisberg*
MATTHEW B. WEISBERG, ESQ
WEISBERG LAW
Attorney ID No. 85570
7 South Morton Ave. 19070
Morton, PA
610-690-0801
Fax: 610-690-0880
**Attorney for Plaintiff**

BY: */s/ Gary Schafkopf*
GARY SCHAFKOPF, ESQ
SCHAFKOPF LAW, LLC
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334
**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA (Harrisburg)

| | | |
|---|---|---|
| IRIS CHAMBERS and <br> LAMAR DESHIELDS | : | |
| Plaintiffs, | : | NO. 1:18-cv-02386 |
| v. | : | |
| YORK COUNTY PRISON | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 2nd day of April 2019, a true and correct copy of the foregoing Plaintiffs' First Amended Complaint was served via ECF upon the following parties:

John Richard Martin, Esq.
Pillar Aught LLC
4201 E. Park Circle
Harrisburg, PA 17111

                                                **WEISBERG LAW**

                                                /s/ Matthew B. Weisberg
                                                Matthew B. Weisberg, Esquire
                                                Attorney for Plaintiff