IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IRIS CHAMBERS and LAMAR DeSHIELDS,** | : | Civil No. 1:18-cv-2386 |
| **Plaintiffs,** | : | |
| v. | : | |
| **YORK COUNTY PRISON,** *et al.*, | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

# **M E M O R A N D U M**

Before the court is the motion to dismiss (Doc. 11) filed by Defendants Clair Doll, Mary Sabol, York County Prison ("YCP"), and John Does 1-10 (collectively, "Defendants"). Having reviewed the brief in support of Defendants' motion to dismiss (Doc. 12), the brief in opposition (Doc. 20) filed by Plaintiffs Iris Chambers ("Ms. Chambers") and Lamar DeShields ("Mr. DeShields"; collectively, "Plaintiffs"), and Defendants' reply (Doc. 21), the motion is granted in part and denied in part.

## **I.** **Background**

For the purposes of resolving the motion to dismiss, the court will treat as true all well-pleaded allegations in Plaintiffs' amended complaint (Doc. 9) and make all reasonable inferences in favor of Plaintiffs. This is a fairly simple Title VII discrimination case. Plaintiffs have been employees of YCP for almost ten years. They complain that they have received, over the course of their employment—

1

including as late as March of 2019—a pattern of discriminatory treatment, some of which involve conduct that would be uniquely offensive to non-white people, such as: jokes about black people eating watermelon and fried chicken; insults regarding their hair; racist insults directly from their supervisors; and coworkers presenting confederate flags and refusing to take them down. Importantly, Plaintiffs have repeatedly advised their supervisors of these actions, and, instead of addressing them, Plaintiffs' managers have in some ways participated in them and others have taken no efforts to remedy them. Plaintiffs have also received disparate treatment which the white employees have not been subjected to, including: being passed over for promotions in favor of less qualified white candidates; intentionally being locked between buildings; being arbitrarily denied backup; being bullied by coworkers; having their personal information distributed to inmates; and having co-workers encourage inmates to file false complaints against them.

On May 14, 2018, Ms. Chambers filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 12-1.)[1] It includes complaints that Ms. Chambers has been subjected to bullying and racist comments from coworkers, despite complaining about these things to her employers. (*See id.* at 3.) It does not include any complaints regarding Ms. Chambers being passed over

---

[1] Because an EEOC complaint is a matter of public record, the court may take judicial notice of it in deciding a 12(b)(6) motion to dismiss. *See McCain v. Indep. Chrysler-Plymouth Inc.*, No. CIV. A. 02-863, 2002 WL 1835650, at *1 (E.D. Pa. Aug. 7, 20902) (collecting cases).

for promotions, being assigned to dangerous areas of the prison, or failing to receive backup when requested.

On May 14, 2018, Mr. DeShields filed a complaint with the EEOC. (Doc. 12-2.) It includes complaints that Mr. DeShields has generally been subjected to racist comments, bullying, exposure to racist imagery,[2] and having his son passed over for a job.[3] (*See id.* at p. 3.) It does not include complaints regarding Mr. DeShields being passed over for promotions, assigned to more dangerous parts of the prison, or suspended.

On December 17, 2018, Plaintiffs brought suit against Defendants, asserting four causes of action: (1) discrimination and retaliation claims under 42 U.S.C. § 2000, *et seq.*, Title VII of the Civil Rights Act of 1964; (2) a 42 U.S.C. § 1983 violation; (3) a "CIVIL RIGHTS CONSPIRACY" claim; and (4) a Pennsylvania Human Relations Act ("PHRA") violation. (Doc. 1.) On February 26, 2019, Defendants filed a 12(b)(6) motion to dismiss. (Doc. 5.) On April 2, 2019, Plaintiff filed an amended complaint, adding new facts and replacing the conspiracy

---

[2] *Cf. Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 254 (3d Cir. 2002) (explaining, in dicta, that the confederate flag can, in context, be a racist symbol promoting racial conflict).

[3] Because both Plaintiffs are employees of YCP, neither has standing to challenge YCP's hiring policies. *See Reichman v. Bureau of Affirmative Action*, 536 F. Supp. 1149, 1167 (M.D. Pa. 1982) (collecting cases stating a party lacks standing to challenge a hiring policy if they were actually hired). Mr. DeShields's son being passed over thus cannot serve as an actionable basis for a discrimination claim. If true, however, it could be evidence of racial animus on the part of the YCP supervisors.

3

claim with a 42 U.S.C. § 1981 claim. (Doc. 9.) In response, Defendants filed a new motion to dismiss one week later. (Doc. 11.)

Defendants move to dismiss on three general grounds: (1) failure to allege sufficient facts; (2) failure to exhaust administrative remedies; and (3) the statute of limitations. Plaintiffs filed a response on May 20, 2019. (Doc. 20.) Defendants filed their reply on June 2, 2019. (Doc. 21.) The issue is thus ripe for review.

## II. **Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, --- F. App'x ----, 2019 WL 4187372, at *3 (3d Cir. Sept. 4, 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). The universe of facts upon which the court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic

4

documents referred to in the plaintiff's complaint. *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and quotations omitted).

5

### III. Discussion

#### A. Plaintiffs failed to exhaust their administrative remedies regarding their promotions complaints.

Prior to filing a complaint, a plaintiff alleging discrimination must exhaust his or her administrative remedies by filing a charge with the EEOC. *Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) (citations omitted). The lawsuit is "limited to claims that are within the scope of the initial administrative charge." *Id.* (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). EEOC charges are provided a "fairly liberal construction," and "the failure to check a particular box on an EEOC charge . . . is not necessarily indicative of a failure to exhaust the mandatory administrative remedies." *Lowenstein v. Catholic Health E.*, 820 F. Supp. 2d 639, 644 (E.D. Pa. 2011) (quoting *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999)). "[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (citing *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978)).

The issue arises when a party brings a claim in court that was not included in a previous EEOC charge. If the plaintiff failed to file any claim with the EEOC, then the court should dismiss the claim without prejudice with leave to file a claim with the EEOC, assuming the statute of limitations has not run. *See Wardlaw v. City*

*of Phila. Street's Dep't*, 378 F. App'x 222, 226 (3d Cir. 2010) ("The District Court [properly] stated that the dismissal of the Title VII claim was without prejudice so that Wardlaw could file an amended claim once she received a right-to-sue letter from the EEOC."); *id.* at 224 n.1 (dismissal can effectively be a final order if the statute of limitations has run). If the plaintiff did file a complaint, but omitted certain events that pre-date the EEOC filing, they are barred from later bringing those claims in court. *See, e.g.*, *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 602 (E.D. Pa. 2015) (dismissing claims with prejudice because they were not included in an earlier-filed EEOC complaint); *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 471, 477 (E.D. Pa. 2014) (same).

A different set of rules governs new events occurring after the filing of the EEOC complaint. New events can be included in a lawsuit if a liberal construction of the EEOC complaint indicates the EEOC was already on notice as to the general category of complaints the new events fall under. *Foust v. FMC Corp.*, 962 F. Supp. 650, 656 (E.D. Pa. 1997) ("[C]laims not included in an EEOC charge but permitted by the district court typically either arise during the pendency of the EEOC investigation or are closely related to conduct alleged in the charge and are considered explanations of the charge."); *Antol*, 82 F.3d at 1295 ("Requiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory act fell squarely within the scope

7

of the earlier EEOC complaint or investigation."). Further, even if not included in the charge, an event occurring during the pendency of the investigation may be validly brought before the court if the issue was nonetheless "brought to the attention of the EEOC investigator before the Right to Sue letter issued." *Foust*, 962 F. Supp. at 656. But in the event new, discrete discriminatory acts occur after the conclusion of the EEOC investigation, the plaintiff is required to file a new charge with the EEOC. *See Wilson-Thomas v. Small Bus. Admin.*, No. 89-1669, 1989 WL 89279, at *2-3 (E.D. Pa. Aug. 3, 1989).

Here, there are four primary issues in Plaintiffs' complaint that were not raised in their EEOC complaints: being passed over for promotions; being placed in dangerous work conditions; being arbitrarily denied backup; and being subject to retaliation. The act of being passed over for a promotion is a discrete act of discrimination and thus cannot be reasonably construed to fall within the EEOC complaint. *See Ford-Greene*, 106 F. Supp. 3d at 602-03. In contrast, Plaintiffs' dangerous work conditions and lack of backup can be liberally construed as general acts of harassment and bullying stemming from an overall hostile workplace. The EEOC charges should thus have put the EEOC and YCP sufficiently on alert regarding those complaints. Further, the retaliation claim is connected to Plaintiffs' larger allegation that complaints about racist conduct in the workplace had been repeatedly handled poorly by their supervisors. *See Reynolds v. Aria Health*, No.

12-2954, 2013 WL 2392903, at *6 (E.D. Pa. May 31, 2013) (collecting cases where courts treated a retaliation claim as encompassed within an EEOC hostile workplace complaint). The court will thus dismiss with prejudice the failure to promote claims but finds Plaintiffs have exhausted their administrative remedies regarding all other claims.

### B. The court will not exclude any allegations based on the statute of limitations.

Defendants move to exclude several allegations that occurred over two years before Plaintiffs filed suit. Because Plaintiffs have not expressly pleaded facts establishing the Defendants' statute of limitations defense, and because Plaintiffs have pleaded racially discriminatory conduct in the past two years, the court will not dismiss the case, or any earlier allegations, on this basis.

The statute of limitations is, generally, an affirmative defense which must be pleaded and proved by the defendant. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Dismissal of a complaint under 12(b)(6) on statute of limitations grounds is nonetheless appropriate "when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Id.* at 251 (internal quotations omitted); *accord id.* at 249 ("If the bar is not apparent on the face of the complaint, then it may not be afforded the basis for a dismissal of the complaint under Rule 12(b)(6).") (internal brackets and quotations omitted) (citing *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). Once evidence must be

9

introduced, the plaintiff will bear the burden of proving any exception to the limitations period, such as the discovery rule; but the court "may not allocate the burden of invoking the [exception] in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Id.* at 251.

Under the continuing tort doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Napier v. Cty. of Snyder*, 833 F. Supp. 2d 421, 427 (M.D. Pa. 2011) (quoting *Snyder v. Baxter Healthcare, Inc.*, 393 F. App'x 905, 909 (3d Cir. 2010)). Thus, "[a] charge alleging a hostile work environment or a constructive discharge 'will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least <u>one act</u> falls within the time period.'" *Camplese v. Morgan Stanley Smith Barney, LLC*, No. 1:15-cv-00784, 2017 WL 2264349, at *4 (M.D. Pa. May 24, 2017) (internal citations omitted) (emphasis in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)); *see also Napier*, 833 F. Supp. 2d at 427 & n.5 (permitting plaintiff to move forward with continuing tort theory at the motion to dismiss stage because one act was alleged within the statute of limitations); *McCafferty v. Thermo Fisher Scientific*, No. 11-

1146, 2011 WL 3443838, at *3 (D.N.J. Aug. 5, 2011) (same). Cases like the one currently before the court are prime for the application of this doctrine:

> Courts most frequently apply the continuing torts doctrine in employment discrimination suits, where the very nature of hostile work environment claims involves repeated conduct that occurs over a series of days or perhaps years. The continuing torts doctrine is essential in the employment discrimination context because claims are based on the cumulative effect of individual acts that may not be actionable in isolation.

*Caroll v. Fein*, No. 1:15-cv-1720, 2018 WL 3418390, at *5 (E.D. Pa. July 13, 2018) (internal citations, quotations, and emphasis omitted).

Here, both Plaintiffs have alleged a pattern of discriminatory conduct that extends into the last two years. Thus, the pattern of discriminatory acts they complain of may very well be one continuing tort, and the court will not foreclose the possibility of applying the continuing tort doctrine at this stage. *See Napier*, 833 F. Supp. 2d at 427 & n.5. The fact that defense counsel subjectively believes "*none* of the events (as alleged) that took place within the applicable limitation period have anything to do with race" is not a sufficient factual basis for the court to dismiss Plaintiffs' allegations. (Doc. 12, at p. 15 (emphasis in original).)

### C. The court will dismiss the 42 U.S.C. § 1981 claim.

Plaintiffs alleged a 42 U.S.C. § 1981 claim against all Defendants. (*See* Doc. 9, pp. 12-13.) Section 1981 only creates a set of rights, the violation of which must be properly brought as a section 1983 claim. *McGovern v. City of Phila.*, 554 F.3d

11

113, 121-22 (3d Cir. 2009). Thus, the court shall dismiss with prejudice Plaintiffs' section 1981 claim as an independent cause of action. Section 1981 shall only be considered as part of Plaintiffs' section 1983 claim.

### D. The court will dismiss the individual defendants both in their individual and official capacities.

Plaintiffs stated in their brief that they are withdrawing their claims against the individual defendants in their individual capacity. (Doc. 20, p. 18, n.1.) The court will thus dismiss the claims against the individuals in their individual capacities. This leaves claims against the individuals in their official capacities and claims against YCP. But "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Brandon v. Holt*, 469 U.S. 464, 472 n.1 (1985) (internal quotations omitted). Thus, there is no legal difference between whether the individual defendants remain named in their official capacities or if Plaintiffs are required to proceed solely against YCP.

But the court is sensitive to the economic implications of being named in a lawsuit. It sometimes must be reported to employers, courts during other proceedings, and insurers. Additionally, removing the individual defendants will not prejudice Plaintiffs. Plaintiffs' recovery would be identical, and, as agents of the entity defendant, they may still be deposed. Thus, because the additional counts against the individuals in their official capacity are superfluous, and removing them

12

will not affect the progress of Plaintiffs' case, the court will dismiss the claims against the individuals in their official capacity as well.

### E. Plaintiffs have alleged sufficient facts to state a claim for a 42 U.S.C. § 1983 claim against YCP.

Under 42 U.S.C. § 1983, a party may bring a private cause of action against any person who, under color of law, violates "any rights, privileges, or immunities secured by the Constitution and laws." The term "color of law" means the "misuse of power made possible because the wrongdoer is clothed with the authority of the state." BLACK'S LAW DICTIONARY 333 (11th ed. 2019). This court has previously held that York County Prison is a municipality and thus cannot be held liable for a section 1983 violation based exclusively on the individual conduct of one of its employees. *See Leslie v. United States*, No. 3:10-cv-1005, 2011 WL 13196558, at *6 (M.D. Pa. Dec. 9, 2011). Instead, the section 1983 plaintiff must allege that YCP violated their rights through the execution of a policy or custom held by the entity. *Id.*

A "policy" is a "standard course of action that has been officially established by an organization, business, political party, etc." BLACK'S LAW DICTIONARY 1401 (11th ed. 2019). There are three ways the conduct of a municipality's agent can be attributed to a custom or policy. First, a decisionmaker possessing final authority may promulgate "a generally applicable statement of policy and the subsequent act

13

complained of is simply an implementation of that policy." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations omitted).

Second, "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself," the municipality may be held liable. *Natale*, 318 F.3d at 584 (internal quotations omitted). Third, "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal quotations and brackets omitted). An "unconstitutional practice [can be] so pervasive that it could be attributed to the municipality, without identifying a particular policymaker responsible for acquiescing in the practice." *Hailey v. City of Camden*, 631 F. Supp. 2d 528, 542 (D.N.J. 2009) (citing *Natale*, 318 F.3d at 584; *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Here, Plaintiffs have alleged that "their supervisors and the wardens were on notice of acts of discrimination based on race towards both Plaintiffs, but the wardens failed to act," and they argue this allegation is sufficient to allege municipal

liability. (Doc. 20, p. 19.)[4]  Defendants' object solely on the basis that Plaintiffs' allegations are conclusory.  Read on the whole, Plaintiffs have alleged sufficient facts from which the court can reasonably infer that YCP has an ongoing and widespread pattern of pervasive discrimination—known throughout all levels of the organization, including as high as the former and current wardens—such that it may have stated a claim for a custom of racist conduct.  Taking all reasonable inferences in favor of Plaintiffs, their allegations regarding their supervisors participating in racist conduct may also constitute policymakers themselves engaging in the conduct at issue.  Thus, Plaintiffs' allegations, at this stage, satisfy the second and third standards under *Natale v. Camden County Correctional Facility*.  The court will thus permit the Section 1983 claim to proceed.

### F. Ms. Chambers has stated a claim for retaliation, but Mr. DeShields has not.

To state a claim for retaliation under Title VII, the Plaintiff must allege that their employer took an adverse employment action against them that was causally connected to the employee engaging in activity protected by Title VII.  *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).  Retaliatory animus can be inferred from temporal proximity between the exercise of one's rights and an adverse

---

[4]  Plaintiffs also imply they have alleged a failure to train theory.  But they have only done so in a conclusory manner.  The court thus will not evaluate whether the failure to train may be enough to allege municipal liability.

employment decision. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-80 (3d Cir. 2000). "[C]ircumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to [an] inference" of retaliatory animus. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)). "Although creating or permitting a hostile work environment can constitute a materially adverse employment action, vicarious liability remains necessary to establish this basis." *Peace-Wickham v. Walls*, 409 F. App'x 512, 522 (3d Cir. 2010).[5] To show vicarious liability, the plaintiff must allege facts from which the court may infer their employer "acted in an intentionally ineffective or negligently indifferent manner" after discovering the antagonistic conduct. *Id.* at 523.

Here, Plaintiffs allege separate examples of retaliation. The court will address each in turn.

Ms. Chambers claims she received a one-day suspension in December of 2018 as retaliation for filing her EEOC complaint. But she filed her EEOC complaint in May of 2018. Ms. Chambers has provided no other explanation for the context of the suspension. The court thus cannot reasonably infer the December suspension was done out of retaliation.

---

[5] The parties have not briefed the issue of sovereign immunity or vicarious liability as it relates to a Title VII violation. The court will thus presume, at this stage, that vicarious liability case law in the Title VII section is applicable to YCP as an employer.

Ms. Chambers also alleges her commander "threatened to punish" her after her allegations were reported in the news. (Doc. 9, ¶ 46.) This action may have sufficient temporal proximity to give rise to an inference of retaliatory animus. But Ms. Chambers did not plead this threat affected her work in any way, or that it was ever carried out. It thus cannot constitute an adverse employment action. *See Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 760 (W.D. Pa. 2010) (holding a threat to fire did not constitute an adverse employment action because the "threat was never carried out and had no demonstrable impact on plaintiff's employment").

Ms. Chambers also claims bullying against her escalated shortly after filing her EEOC complaint, and that she specifically reported the events to her supervisors, but they took no corrective actions. These allegations satisfy the temporal proximity and pattern of antagonism standards such that the court can infer an adverse employment condition, attributable to YCP, was done in retaliation to Ms. Chambers exercising her Title VII rights. The court will, at this stage, permit Ms. Chambers's retaliation claim to go forward.

Mr. DeShields argues Defendants retaliated against him in January of 2019 after his EEOC complaint was reported in the news. He claims that his coworkers posted racist comments on YCP's Facebook page and encouraged inmates to file false complaints against him. Mr. DeShields also acknowledges, however, that, upon learning about the fraudulent complaints, individuals with authority removed

17

the instigating officer. Mr. DeShields has also pleaded that the racist Facebook "comments were eventually removed."[6] (Doc. 9, ¶ 65.) Thus, the fraudulent complaints were competently addressed by Mr. DeShields's supervisors. And the racist Facebook comments were removed, thus prompting no further action by the advisors. Based on these facts, Mr. DeShields has failed to allege sufficient facts to demonstrate vicarious liability on YCP's part for a pattern of antagonistic conduct by his coworkers. The court will thus dismiss his retaliation claim without prejudice.

### G. Plaintiffs have stated a claim for discrimination under Title VII and the PHRA.

"Title VII makes it an unlawful employment practice for an employer to discriminate against an individual because of such individual's race, color, religion, sex, or national origin." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and ellipses omitted) (citing 42 U.S.C. § 2000e-2(a)(1)). "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* (internal quotations omitted) (citing 42 U.S.C. § 2000e-2(m)).[7] Title VII is

---

[6] It is unclear whether these latter comments were removed by the person posting them or by a prison supervisor. Taking all reasonable inferences in favor of Mr. DeShields, the court will assume that the prison supervisor did not remove them, but the person did.

[7] Title VII and PHRA disparate treatment claims are subject to the same standards. *Id.* at 791 n.8.

18

designed to address "discriminatory conduct" that is "so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origins." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

As applied here, a reasonable person, assuming the allegations in the complaint are true, could come to no other conclusion than YCP has been at best complicit in, and at worst actively participating in, a widespread culture of racist activity towards its black employees, and that Plaintiffs have been particularly targeted by this conduct. Defendants effectively argue the court should presume that years of repetitive bullying suffered by black people in the workplace are just part of employment in this country. Their arguments are anathema to the foundations of Title VII. While the court makes no judgment as to whether Plaintiffs' facts are actually true—Defendants may very well be able to defend themselves at trial—the facts as alleged fall squarely within the type of conduct Title VII and the PHRA have made illegal.

### IV. <u>Conclusion</u>

For the reasons explained above, the court shall dismiss, with prejudice, Plaintiffs' failure to promote claims, section 1981 claims, and claims against the individual defendants, both in their individual and official capacities. The court will also dismiss Mr. DeShields's retaliation claim without prejudice, granting him leave

to replead within twenty-one days.  The motion is denied in all other regards.  An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: October 21, 2019